```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

                                     :
ERIK B. CHERDAK
                                     :

     v.                              :  Civil Action No. DKC 2006-0435

                                     :
TARGET CORPORATION
                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this patent infringement case is the motion of Defendant Target Corporation to stay this action pending reexamination by the United States Patent and Trademark Office (PTO) of patents held by Plaintiff Erik B. Cherdak. (Paper 18). The issue is fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will grant Defendant's motion.

**I. Background**

Plaintiff holds two patents, both entitled "Athletic Shoe Timing Device," for specific types of lighted shoes. The first, patent number 5,343,445, was issued by the PTO on August 30, 1994. The second, patent number 5,454,269, was issued on September 19, 1995.

Plaintiff commenced this case on February 21, 2006, by filing a complaint alleging one count of patent infringement against Defendant under 35 U.S.C. § 271. Plaintiff alleges that Defendant, a retail chain, sold two models of athletic shoes that violated his patents. This court issued a scheduling order on May 18, 2006.

The period for discovery under that order ends on January 2, 2007. Plaintiff provided his preliminary expert report on September 15, 2006.

On September 29, 2006, Defendant filed with the PTO two requests for reexamination, seeking PTO review of the legitimacy of Plaintiff's patents based on prior art claimed in patent number 5,303,485, which was filed by Mark R. Goldston and others on February 5, 1993, and issued on April 19, 1994, (the "Goldston '485 patent").  The reexamination requests argue that Plaintiff's patents are invalidated by the Goldston '485 patent, which is prior art to Plaintiff's patents.  The PTO has three months to determine whether to grant a reexamination of Plaintiff's patents, and if reexamination is granted, it can result in the cancellation, modification, or confirmation of Plaintiff's patents.  Defendant filed a motion in this court on October 2, 2006, requesting that this case be stayed pending PTO reexamination of Plaintiff's patents, or at least, that the scheduling order deadlines be extended 120 days until the PTO determines whether to grant reexamination.  Plaintiff opposes this motion, and requests that the case continue without delay.

**II. Standard of Review**

"Courts have inherent power to manage their dockets and stay proceedings, . . . including the authority to order a stay pending conclusion of a PTO reexamination."  *Ethicon, Inc. v. Quigg*, 849

F.2d 1422, 1426-27 (Fed.Cir. 1988) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied*, 464 U.S. 395 (1983)).  However, "[t]he court is not required to stay judicial resolution in view of the reexaminations." *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed.Cir. 2001) (citing *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed.Cir. 1998)).  Courts have interpreted the legislation authorizing patent reexamination to conclude that stays pending reexamination should be liberally granted.

> Reexamination of patent validity is authorized under 35 U.S.C. [s]ection 301 *et. seq.* . . . As several courts have noted, the sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district courts with the expertise of the patent office.

*Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F.Supp.2d 1360, 1363 (M.D.Fla. 2001) (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed.Cir.), *modified on other grounds*, 771 F.2d 480 (1985)); *Grayling Indus. v. GPAC*, 19 U.S.P.Q.2d 1872 (N.D.Ga. 1991); *Robert H. Harris Co. v. Metal Mfg., Inc.*, 19 U.S.P.Q.2d 1786, 1789 (E.D.Ark. 1991).  "A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomms. Tech., LLC, Patent Litigation*, 385

3

F.Supp.2d 1022, 1023 (N.D.Ca. 2005) (citing *Gould*, 705 F.2d at 1342).

District courts often consider a three factor test in determining whether a stay pending reexamination is appropriate in a particular case.

> In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999), *appeal dismissed*, 243 F.3d 554 (2000); *see also*, *e.g.*, *In re Cygnus Telecomms. Tech.*, 385 F. Supp.2d at 1023; *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D.Del. 1991).

**III. Analysis**

**A.  Prejudice or Tactical Disadvantage to Plaintiff**

The first factor often analyzed by courts considering whether to stay a patent case pending reexamination by the PTO is whether such a stay would "unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Xerox Corp.*, 69 F.Supp.2d at 406.  Plaintiff asserts that a stay would put him at a tactical disadvantage and that it would prejudice his ultimate ability to receive complete relief, based in part on the time reexamination on the merits might take, the delay in issuance of any injunction, and

4

the fact that he has already submitted an expert report while Defendant has not.

Courts have refused to grant a stay because of a tactical disadvantage when it appears that one party has unduly delayed in requesting reexamination. *Freeman v. Minn. Mining & Mfg. Co.*, 661 F.Supp. 886, 887 (D.Del. 1987); *see also Remington Arms Co., v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920, at *3 (M.D.N.C. Dec. 17, 1998) ("Defendant's unjustified delay in filing its reexamination request weighs in favor of denying the stay"). Significant prejudice also justified a court in limiting the length of a stay pending reexamination when the plaintiff sought reexamination and the defendant claimed that the plaintiff's allegations of infringement had made its potential franchisees wary and would continue to harm its business. *See In re Laughlin Products, Inc., Patent Litigation*, 265 F.Supp.2d 525, 533 (E.D.Pa. 2003).

Plaintiff asserts that Defendant unduly delayed its request for reexamination because Defendant knew about the existence of Plaintiff's patents for over seven months before requesting reexamination. This argument is without merit. Defendant was aware of the existence of Plaintiff's patents once it was served with the complaint, but, in order to request reexamination, Defendant also had to be aware of the prior art, in this case the Goldston '485 patent, upon which the reexamination requests are

5

based. Defendant asserts that it requested reexamination quickly after learning of the Goldston '485 patent. (Paper 20, at 13-14).

Plaintiff also asserts that a stay would result in a severe tactical disadvantage because he has disclosed his preliminary expert report on the issue of infringement, but Defendant has not yet made any expert disclosures. Plaintiff argues that Defendant is requesting a stay as a dilatory tactic either to gain additional time to respond to Plaintiff's preliminary expert disclosure or to cover up a failure to timely file its own expert disclosure. There is no basis to conclude, however, that Defendant's requests for reexamination are a dilatory tactic, as discussed above. Furthermore, any disadvantage related to the timing of expert disclosures is relatively minor, because Plaintiff will still have an opportunity to revise currently disclosed expert reports based on new evidence or circumstances after the stay ends.

Finally, Plaintiff argues that a lengthy delay in this matter will leave him without an adequate remedy for the alleged infringement because his invention may lose commercial value by that time. A similar argument was a factor in the decision not to allow a stay in *Remington Arms Co.*, 1998 WL 1037920, at *2. In this case, however, Plaintiff only speculates as to the possibility that his patents could lose commercial value during the PTO reexamination proceeding, whereas in *Remington Arms Co.*, there was significant evidence to support such a finding. *Id.* This mere

possibility of prejudice is insufficient to outweigh the advantages of a stay unless and until circumstances constituting more immediate prejudice arise.

**B.   Advantages of a Stay Pending Reexamination**

As other courts have noted, staying a patent infringement case for reexamination of the patents at issue is efficient and will provide this court with the benefit of the PTO's expertise regardless of the outcome of the reexamination.  "If the [PTO] cancels any of the . . . claims asserted in the two patents, [the] infringement and validity issues . . . before this court would be resolved.  For those claims that survive reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations . . . ."  *In re Cygnus Telecomms. Tech.*, 385 F. Supp.2d at 1024 (citing *Gould*, 705 F.2d at 1342). The same benefits can be expected from any outcome of the reexamination process in this case.  As a result, this factor weighs heavily in favor of granting the stay.

**C.   Stage of the Proceeding**

Courts generally will not grant a stay pending reexamination if discovery is complete and a trial date is set because the efficiencies gained from a stay pending reexamination are reduced, and the potential for prejudice increased, "after protracted, expensive discovery or trial preparation."  *Xerox Corp.*, 69 F.Supp.2d at 407 (quoting *Freeman*, 661 F.Supp. at 888).  In this

case, discovery has commenced, and interrogatories, document requests, and an expert report have been provided, but significant discovery remains to be conducted.  At this relatively early stage in the proceedings, the advantages that would result from a stay pending reexamination, namely narrowing the issues before the court and receiving the PTO's expert opinion on validity, outweigh the resources already expended on this matter.  Under the present circumstances, these advantages also outweigh Plaintiff's claims that he will be prejudiced by any delay in receiving Defendant's expert disclosures or by any possible change in the commercial value of his patents.

## VI.  Conclusion

For the reasons set forth above, the motion of Defendant to stay this proceeding will be granted.  The parties will be directed to file status reports with this court every three months, and either party may move to terminate the stay for good cause, if the circumstances warranting the stay have changed.  A separate Order will follow.

                                                                                                                /s/
                                              DEBORAH K. CHASANOW
                                              United States District Judge