

**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,269 | 10/02/2006 | 5343445 | 10505-333854 | 7070 |

| 7590 | 09/01/2007 |
|---|---|

James B. Thompson, Esq.
MILLER, MILLER & CANBY
200-B Monroe Street
Rockville, MD  20850

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 09/01/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

William K. Weimer
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

# EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,269*.

PATENT NO. *5343445*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/008,269 | Patent Under Reexamination<br>5343445 |
|---|---|---|
| | Examiner<br>James Menefee | Art Unit<br>3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☐ Responsive to the communication(s) filed on _____ .    b☐ This action is made FINAL.
c☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>1</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.   3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.   4. ☐ _____

Part II   SUMMARY OF ACTION

1a. ☒ Claims <u>1-3, 19, 20, 22 and 23</u> are subject to reexamination.
1b. ☒ Claims <u>4-18 and 21</u> are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☐ Claims _____ are patentable and/or confirmed.
4. ☒ Claims <u>1-3, 19, 20, 22 and 23</u> are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
   a)☐ All  b)☐ Some*  c)☐ None   of the certified copies have
   1☐ been received.
   2☐ not been received.
   3☐ been filed in Application No. _____ .
   4☐ been filed in reexamination Control No. _____ .
   5☐ been received by the International Bureau in PCT application No. _____ .
   * See the attached detailed Office action for a list of the certified copies not received.
9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.
10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)   Office Action in Ex Parte Reexamination   Part of Paper No. 20070817

Application/Control Number: 90/008,269　　　　　　　　　　　　　　　　　　Page 2
Art Unit: 3992

# DETAILED ACTION

This is an *ex parte* reexamination of U.S. Patent No. 5,343,445 ("the '445 patent"). As described in the Order Granting Reexamination, mailed 11/22/2006, only claims 1-3, 19-20, and 22-23 are subject to reexamination. Claims 4-18 and 21 are not reexamined.

The following are discussed herein.

U.S. Patent No. 5,303,485 to Goldston et al. ("Goldston").

U.S. Patent No. 5,285,586 to Goldston et al. ("Goldston II").

U.S. Patent No. 5,452,269 to Cherdak ("Cherdak '269").

Request for Reexamination filed 10/2/2006 ("Request").

Exhibit A filed with the Request for Reexamination (Jointly Prepared Charts listing, *inter alia*, plaintiff's (patent owner's) literal infringement position in related litigation) ("Exhibit A").

## *Claim Construction*

The construction of certain claim terms will have a bearing on whether the prior art sufficiently reads on the claims. In related litigation, *Cherdak v. Target Corp.*, 8:06cv435, (D. Md., filed 2/21/2006), patent owner has urged a certain construction of the various claim terms. See Exhibit A. During examination claims are to be given their broadest reasonable interpretation. See MPEP 2111 and cases cited therein. While patent owner's contentions concerning the scope of the claims are broad, there is no suggestion that they are unreasonable. Thus, the examiner construes the claims in the same manner as patent owner has done in the related litigation. This position as to the claim terms is also consistent with the construction given by the third party in the claim charts of the Request.

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

Claims 1-3 and 19-20 are rejected under 35 U.S.C. 102(e) as being anticipated by Goldston.

Regarding claim 1, Goldston discloses:

**A method for indicating hang time off the ground and in the air during a jump by a person wearing an athletic shoe, said method comprising the steps:**

Goldston discloses light sources 12 disposed at least partially in the sole of a shoe. Col. 5 lines 25-28. The light sources turn on when the wearer's foot leaves the ground, and turn off when the foot lands. Col. 5 lines 56-66; col. 8 lines 46-56. The light sources may also be connected to an oscillator causing the lights to flash or blink while the circuit is on, i.e. when the foot is off the ground. Col. 9 lines 16-19.

As described by patent owner in Exhibit A, the flashing of the lights can be deemed a timing device. For example, three blinks in the air take longer than two blinks, "and therefore LED blinks/flashes clearly measure and indicate the passage of time. Like sands of an hourglass that measure and indicate time, so too are the number of LED blinks." Exhibit A at 11.

"Moreover, the control circuitry of the lighting modules [i.e. the oscillator of Goldston] operates based on clock signals/pulses that control internal working of the lighting module." *Id.* As the flashing lights may be a timing device, and because the lights are actuated by the foot leaving and then returning to the ground, the lights provide an indication of hang time.

**(a) sensing, within said shoe, when said shoe leaves the ground during said jump;**

**(b) sensing, within said shoe, when said shoe returns to the ground at the end of said jump; and**

Goldston discloses the shoe includes a pressure sensitive switch that is closed when the foot is on the ground and is open when the foot is removed from the ground. Col. 5 lines 57-60. The switch is disposed in the sole portion of the shoe between the wearer's foot and the ground to sense the differential in pressure between the foot and the ground as the wearer's weight is on and off the ground, as during jumping. Col. 5 line 67- col. 6 line 8.

**(c) activating a hang time indicator on said shoe during the time interval between said shoe leaving and returning to the ground as sensed in steps (a) and (b), respectively, said indicator providing an indication of hang time in a manner perceptible to said person.**

As noted above, the light sources indicate the hang time and are activated/deactivated upon the wearer's foot leaving/returning to the ground.

Application/Control Number: 90/008,269  Page 5
Art Unit: 3992

Regarding claim 2, Goldston discloses **wherein step (c) comprises illuminating a light emitting device on said shoe throughout said time interval.** As noted above the light sources 12 may be illuminated while the wearer's foot is off the ground.

Regarding claim 3, Goldston discloses **wherein step (c) comprises flashing a plurality of flashing lights on said shoe throughout said time interval.** As noted above the light sources 12 may be illuminated and flashing while the wearer's foot is off the ground.

Regarding claim 19, Goldston discloses:

**An athletic shoe comprising: a sole; a shoe upper mounted on said sole;**

Goldston discloses an athletic shoe 1 comprising a sole 5 and upper portion 2. See Fig. 1, col. 4 lines 1-22.

**pressure responsive means on said shoe for providing a signal in response to said shoe leaving the ground when on the foot of an individual, and for removing said signal in response to said shoe returning to the ground;**

Goldston discloses a switch that opens when a wearer's foot is on the ground (due to the wearer's weight on the sole), and closes when the wearer's foot is removed from the ground (and thus weight is removed). Col. 5 lines 56-66. The switch is a pressure sensing switch located in the sole, col. 5 line 67 – col. 6 line 8, and the actuation of the switch is sufficient to meet the providing/removing a signal limitations.

**circuit means in said shoe actuable in response to said signal; and**

Circuitry is included in the shoe and connected between the pressure sensitive switch and the lights. Col. 5 lines 48-55.

**indicator means at said shoe responsive to actuation of said circuit means for providing a perceptible indication related to the time said shoe is off the ground.**

Light sources 12 turn on when the foot leaves the ground, i.e. in response to the pressure sensitive switch and actuation of the circuitry thereto. Col. 8 lines 46-56. The turning on of the lights is a perceptible indication related to the time the shoe is off the ground

Regarding claim 20, Goldston discloses **wherein said indicator means comprises at least one device responsive to actuation of said circuit means for emitting light while said shoe is off the ground.** As noted above, the indicator means are light sources 12 that respond to the actuation of the circuit to emit light while the wearer's foot is off the ground.

## Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 22-23 are rejected under 35 U.S.C. 103(a) as being unpatentable over Goldston in view of Goldston II.

Application/Control Number: 90/008,269                                                                                           Page 7
Art Unit: 3992

Regarding claim 22, Goldston discloses:

**In an athletic shoe having an upper member secured to a sole member, the sole member having a heel portion with a cavity in which circuitry is housed, apparatus for indicating the time that the athletic shoe is off the ground and in the air during a jump by a person wearing the athletic shoe, said apparatus comprising:**

Goldston discloses an athletic shoe 1 comprising a sole 5 and upper portion 2. See Fig. 1, col. 4 lines 1-22. The sole has a heel portion in which circuitry is housed. See for example circuitry 16,17 shown in Figs. 3-4. There is necessarily a cavity in which such circuitry is housed. The shoe includes an apparatus for indicating the time the shoe is off the ground and in air during a jump by the wearer, i.e. a hang time indicator as described above as to claim 1, or the indicator means described above as to claim 19.

**a pressure responsive switch producing a signal when said athletic shoe is off the ground and in the air, said switch being disposed in the sole member of said athletic shoe;**

Goldston discloses a pressure responsive switch 18 that opens when a wearer's foot is on the ground (due to the wearer's weight on the sole), and closes when the wearer's foot is removed from the ground (and thus weight is removed). Col. 5 lines 56-66. The switch is a pressure sensing switch located in the sole, col. 5 line 67 – col. 6 line 8, and the actuation of the switch is sufficient to meet the producing of a signal.

**a plurality of light emitting diodes (LEDs) disposed on the athletic shoe, said plurality of light emitting diodes (LEDs) emitting light during the period of time when the athletic shoe is off the ground and in the air during said jump to provide a visual indication of the amount of time that the athletic shoe is off the ground and in the air;**

Goldston includes a plurality of LEDs 12 disposed on the shoe. The LEDs turn on when the wearer's foot leaves the ground, and turn off when the foot lands. Col. 5 lines 56-66; col. 8 lines 46-56. The light sources may also be connected to an oscillator causing the lights to flash or blink while the circuit is on, i.e. when the foot is off the ground. Col. 9 lines 16-19.

As described above with respect to claim 1, the flashing of the lights can be deemed a timing device that provides a visual indication of the amount of time that the athletic shoe is off the ground and in the air.

**a controller disposed in the sole member of the athletic shoe and connected to said switch and to said plurality of light emitting diodes (LEDs), wherein said controller is responsive to said signal to cause said plurality of light emitting diodes (LEDs) to emit said light during said period of time that said athletic shoe is off the ground and in the air; and**

Goldston includes circuitry disposed in the sole and connected to the switch and LEDs, that is responsive to a signal from the switch to cause the LEDs to emit light while the shoe is off the ground. See, e.g., circuitry 16,17 of Figs. 3-4. The switch itself in combination with the circuitry may be deemed a controller. It is also noted that more sophisticated switches may be used, col. 9 lines 4-15, which would also necessarily include a controller.

**a power source connected to said switch, to said plurality of light emitting diodes (LEDs) and to said controller, said power source disposed in the sole member of said athletic shoe.**

Goldston discloses a power source 14 connected to the switch 18 and LEDs 12 and the circuitry. It is not, however, disclosed that the power source is disposed in the sole member; in Goldston, the power source is disposed in the shoe upper. Goldston II teaches that it was known in the art, in athletic shoes that include light emitting devices therein, to include a power supply in the sole member of the shoe, particularly in the heel portion of the sole. See, e.g., Fig. 1, showing plug-in module 32, including a battery, disposed within the heel portion of the sole of the shoe. See also col. 2 lines 49-54. It would have been obvious to one skilled in the art to incorporate the battery and circuitry of Goldston into a plug-in module of Goldston II, i.e. a module that may be plugged into the heel of the sole, so that the entire module, including battery and light sources, can be easily replaced as needed, as is taught in Goldston II. See col. 2 lines 59-68.

Regarding claim 23, Goldston discloses **wherein said switch, said plurality of LEDs, said controller and said power source are disposed in the heel portion of the sole member of said athletic shoe.** The switch 18, LEDs 12, controller (i.e. Goldston's circuitry) are within the heel portion of the sole. The power source may also obviously be in the heel portion of the sole for the same reasons as noted above as to claim 22.

## *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Claims 1-3 and 19-20 are rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1, 6, 11, 12, and 16 of Cherdak '269, alone or in view of Goldston. Although the conflicting claims are not identical, they are not patentably distinct from each other.

Regarding claim 1:

| '445 patent claim 1 | Cherdak '269 |
|---|---|
| A method for indicating hang time off the ground and in the air during a jump by a person wearing an athletic shoe, said method comprising the steps of: | Claim 12 claims a method of measuring hang time off the ground and in the air of a person |
| (a) sensing within said shoe when said shoe leaves the ground during said jump | In claim 12 step (b), a timing device within the shoe is actuated when the shoe leaves the ground. Thus, it is sensed within the shoe when the shoe leaves the ground. |
| (b) sensing, within said shoe, when said shoe returns to the ground at the end of said jump | In claim 12 step (c), a timing device within the shoe is deactuated when the shoe returns to the ground. Thus, it is |

|   | sensed within the shoe when the shoe returns to the ground. |
|---|---|
| (c) activating a hang time indicator on said shoe during the time interval between said shoe leaving and returning to the ground as sensed in steps (a) and (b), said indicator providing an indication of hang time in a manner perceptible to said person. | In claim 12 step (d) there is an indication at said shoe representing the time interval between said actuation and deactuation (i.e. an indication of hang time). |

Regarding claims 2, Cherdak '269 claim 16 states that a light emitting device may be illuminated during said time interval.

Regarding claim 3, Cherdak '269 does not explicitly claim that there may be flashing lights during said time interval. As noted above, Goldston teaches a similar device that may include an oscillator to provide flashing lights during the time interval. Col. 9 lines 16-19. It would have been obvious to one skilled in the art to provide for such flashing lights, as Goldston indicates that this is merely a simple design variation that would have been well within the knowledge and skill of one of ordinary skill in the art.

| '445 patent claim 19 | Cherdak '269 |
|---|---|
| An athletic shoe comprising: a sole; a shoe upper mounted on said sole; | Claim 1 claims an athletic shoe comprising a sole and shoe upper mounted on the sole. |
| Pressure responsive means on said shoe for providing a signal in response to said shoe leaving the ground when on the foot of an individual and for removing said signal in response to said shoe returning to the ground. | Claim 11 includes a switch mounted on the sole to contact the ground and detect when the shoe is in the air. As the specifications of the '445 patent and Cherdak '269 are the same, this switch will fall within the pressure responsive means limitation that invokes 35 U.S.C. 112 6th par. |
| Circuit means in said shoe actuable in response to said signal | Claim 1 claims a timing device in said sole for measuring the time the shoe is off the ground. This corresponds to the circuitry of the '445 patent claim 19. |
| Indicator means at said shoe responsive to actuation of said circuit means for providing a perceptible indication relating to the time the shoe is off the ground | Claim 1 claims a notification device coupled to the timing device to provide a message (i.e. perceptible indication) to a wearer conveying information related to the amount of time the shoe is off the ground. |

Application/Control Number: 90/008,269    Page 12
Art Unit: 3992

As noted, the pressure responsive means limitation is not explicitly claimed in claim 1, but is met in claim 11. The limitation is also taught by Goldston in a similar shoe as described above in the 102 rejection. It would have been obvious to one skilled in the art to include this pressure responsive means in the shoe claimed in the '445 patent claim 1. One skilled in the art would have recognized that there must be some means of starting and stopping the timing device, and the entire purpose of the claimed device is to indicate the time that the shoe is off the ground, therefore the pressure sensitive switch of Goldston—sed in the same place in a nearly identical device for the same purpose—would be an ideal fit and one skilled in the art would have recognized this. Thus, even without going to claim 11, '445 patent claim 19 is not patentably distinct from Cherdak '269 claim 1.

Regarding claim 20, Cherdak '269 further claims in claim 6 that the visual display, i.e. the indicator means, is a light emitting component.

### *Conclusion*

Patent owner is given a shortened statutory period to reply of **one month** because litigation has been stayed pending reexamination. See MPEP 2263.

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

The patent owner is reminded that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j).

Extensions of time under 37 CFR 1.136(a) will not be permitted in this proceeding because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch." Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '445 patent throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286. The third party is also reminded of the ability to apprise the office of such activity. All correspondence relating to this *ex parte* reexam proceeding should be directed as follows:

Application/Control Number: 90/008,269                                                      Page 15
Art Unit: 3992

By **U.S. Postal Service Mail** to:

    Mail Stop *Ex Parte* Reexam
    ATTN: Central Reexamination Unit
    Commissioner for Patents
    P.O. Box 1450
    Alexandria, VA 22313-1450

By FAX to:   (571) 273-9900
               Central Reexamination Unit

By hand to:  Customer Service Window
              Randolph Building
              401 Dulany St.
              Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

*/James Menefee/*

James Menefee
Primary Examiner
Central Reexamination Unit 3992
(571) 272-1944

August 23, 2007

Conferees:

*/Ovidio Escalante/*

*/signature/*

Application/Control Number: 90/008,269 Page 13
Art Unit: 3992

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |